**Jonathan COGER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1766.**

Supreme Court of Alaska.

Jan. 16, 1974.

Susan Burke, Asst. Public Defender, Herbert D. Soll, Public Defender, Anchorage, for appellant.

Ivan Lawner, Asst. Atty. Gen., John E. Havelock, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

OPINION

CONNOR, Justice.

Jonathan Coger appeals from a July 1972 judgment of conviction sentencing him to three years imprisonment for selling hallucinogenic drugs in violation of AS 17.12.-

13. Snyder v. State, 496 P.2d 62, 63 (Alaska 1972).

010. The only issue in this appeal challenges the state's procedure in presenting evidence to the grand jury.

On April 12, 1972, the grand jury convened in Fairbanks, Alaska, to consider a series of drug cases which were based on the undercover activities of one Dennis McKelvie, a Fairbanks city policeman. The grand jury heard testimony from Roland K. Bonneville, a special investigator for the Fairbanks Police Department, and from Joseph L. Turner, an investigator for the Alaska State Troopers, both of whom supervised McKelvie's undercover operations. Bonneville and Turner described how the operations were set up and how McKelvie was supervised. Then McKelvie himself was called as a witness and was sworn.

The district attorney called on McKelvie to give very little direct testimony. Instead, the district attorney read to the grand jury police reports prepared by Bonneville and Turner. While McKelvie was never asked specifically as to the correctness of the entire statement, he clearly indicated his concurrence by pointing out where a mistake had been made and, further, by answering direct questions from a grand juror.

In the case of Jonathan Coger, the proceedings before the grand jury consisted of the following:

"MR. CLAYTON: [The report concerning] Jonathan Coger, indicates that you told the officers that about 0230 hours, that'd be 2:30 in the morning on February 10th, of '72 you were with Don Daily (phonetic) in the French Quarter. Don and you arranged to buy 2 lids of marijuana from a Negro male in the bar. . . . Don made the arrangements with another Negro male who he called Garfield (phonetic). At approximately 2:45 we left the French Quarter and went into a 1963 Ford Galaxy, license 58374 Alaska. Garfield (phonetic) drove and the other Negro, who Don called John, rode next to him. Don and I rode in the back seat. We drove to 901 Cushman Street. A sign on the front said,

Parrish Self Help (phonetic)—Parrish Self Help (phonetic). John rolled a marijuana cigarette because he wanted us to try it before we walked—bought. In order to insure a smooth operation I faked a few hits off the joint. I avoided inhaling the smoke as I always do. At approximately 3:30, John brought a lid out of the back room and asked if it was all right. Don said he wanted a lid and so did I. John got another lid out of the back room. I took one lid and Don Daily (phonetic) took the other. Don gave him a Twenty Dollar ($20.00) bill; I gave him 2 tens (10.00s). Garfield (phonetic) was a witness. At about 4—0400 Don Daily (phonetic), Garfield (phonetic) and myself left the residence at 901 Cushman. John stayed at the residence. We returned to the French Quarter at 0400. I turned the marijuana over to Turner and Bonneville at 1910 hours at Fairbanks police department. Turner sealed and wrapped the marijuana in my presence for shipment. That report indicates 10 grams of vegetative matter showing without a doubt the presence of marijuana. The report indicates that the '63 Galaxy was registered to Garfield Jenkins (phonetic). And that you had told them that the man was called John. And how did you identify him to the police?

A. [McKelvie] I identified him through police photographs.

MR. CLAYTON: And that was Jonathan Coger.

A. And I'd like to indicate one mistake that was made here. The person that's been called Don Daily, (phonetic) and he may be called that in a few more reports until I positively identified him, is in fact Donald Jessie Darling (phonetic).

MR. CLAYTON: And at this time you knew him, Donald Daily (phonetic)?

A. Right. I—I'd made a mistake when I heard him introduce himself and I thought his name was Daily (pho-

netic). Actually it's Darling (phonetic).

MR. CLAYTON: At this time you hadn't had any transactions with Don—with Don?

A. No.

A GRAND JUROR: Were you and Don both there with Coger at this time?

A. That's correct."

On April 12, 1972, the grand jury returned an indictment against Jonathan Coger charging him with having sold approximately ten grams of marijuana to Dennis McKelvie. On June 1, 1972, Coger moved to dismiss the indictment on the ground, *inter alia*, that insufficient evidence was presented to the grand jury to support the indictment. Following a hearing on June 2, 1972, the motion was denied by the superior court. On June 7, 1972, the jury found Coger guilty of the crime of selling a hallucinogenic drug as charged in the indictment. The court entered judgment pursuant to the jury's verdict on July 13, 1972.

■ Appellant argues that his conviction should be reversed because the state elicited no *direct* testimony before the grand jury from its undercover agent as to appellant's alleged sale of drugs.[1] He characterizes the district attorney's reading of the police report in the context of questioning the witness McKelvie as hearsay evidence because it was an out-of-court

declaration offered to show the truth of matter asserted therein.[2] Citing the American Bar Association standards relating to the use of hearsay in proceedings before the grand jury [3] (which this Court adopted in Taggard v. State, 500 P.2d 238, 242 (Alaska 1972)) he concludes that there was no necessity for not eliciting direct testimony, that, as a result, the procedure leading to his indictment failed to meet the A.B.A. Standards, and therefore that the trial court erred in denying his motion to dismiss the indictment.

While we cannot understand why the district attorney summarized the police report in the process of examining the witness and thereby risked the possibility of improperly influencing the grand jury, we nevertheless are unable to agree with appellant that the procedure was so defective as to require reversal. We simply do not subscribe to appellant's characterization of the district attorney's question as hearsay.

■ Inasmuch as the prosecutor was not a sworn witness but was acting as counsel when he summarized the police report, his statement was technically not testimony. In an adversary proceeding, to be sure, that form of question might be objected to as leading. But it is a familiar phenomenon of trial practice that a leading question may be easily rephrased and thereby rendered unobjectionable. Inasmuch as grand jury practice is ex parte and the district attorney has no opponent to alert him to improperly phrased questions,[4] the cru-

---

1. The fact that the defendant has already been convicted does not of itself bar a challenge to the indictment. As we said in Taggard v. State, 500 P.2d 238, 243 (Alaska 1972):
   "A mere formal defect does not require dismissal of an indictment after the guilt of the defendant has been established at a fair trial. But courts do not hesitate to dismiss an indictment, even after a conviction, when the defect in the indictment is substantial. The conviction must be overturned when an indictment is invalid and the error was properly preserved by a timely objection prior to trial."

2. *See* C. McCormick, Law of Evidence § 225, at 460 (1954).

3. American Bar Association Standards Relating to the Prosecution Function and the Defense Function § 3.6(a), at 88–89 (Approved Draft, 1971).

4. The absence of an opponent is not to be regarded by district attorneys as license to engage in questionable practices before the grand jury. We are not unmindful of the trial court's expression of disapproval of the procedure utilized in this case:
   "In denying the motion to dismiss the indictment, this court does not put its seal of approval on the procedure of eliciting testimony before the grand jury as it was done in this case. Practice lends itself to possible abuse. Now, Judge Hepp has criti-

cial issue here is whether the evidence sought to be elicited was so tainted by the form of the question that it could not properly support the indictment.

Alaska Criminal Rule 6(r) as promulgated in Supreme Court Order 157 provides in part: *"Evidence* which would be legally admissible at trial shall be admissible before the grand jury." (Emphasis added.) Unquestionably, McKelvie was competent to testify concerning what he observed and did in purchasing marijuana from appellant on February 10, 1972. And, he would certainly be permitted to refresh his recollection with any notes or reports he had made contemporaneously with the events themselves. Appellant's objection, then, can go only to the form of the district attorney's question and not to its content. In our opinion, this defect did not render the evidence of Coger's sale of marijuana to McKelvie inadmissible before the grand jury. We therefore hold that the lower court did not err in declining to dismiss the indictment.

Despite our holding we strongly disapprove of the procedure followed. We will in the future hold indictments to be defective when based solely upon narrative statements read to a witness, rather than upon testimony elicited by means of a question and answer method.[5]

Affirmed.

[ci]zed the procedure . . . in the Alexander case and I criticize the procedure in the Coger case. Someone in the district attorney's office is obviously not getting the message and a different result might well append itself in a future case."
As we observed in State v. Shelton, 368 P.2d 817, 819 (Alaska 1962):
"[A] vital function of the grand jury [is] the protection of the innocent against oppression and unjust prosecution." (Footnote omitted.)
We will zealously review alleged abuses of the grand jury system to ensure that this vital function is not eroded.

5. Our holding does not prohibit the use of statements where permitted by the American Bar Association Standards Relating to the Prosecution Function and the Defense Function § 3.6(a), at 88 (Approved Draft, 1971), as adopted in our opinion in Taggard v. State, 500 P.2d 238, 242, n. 14 (Alaska 1972), and Burkholder v. State, 491 P.2d 754, 758, n. 14 (Alaska 1971). We note that the state in its brief has conceded that the method used here to adduce evidence before the grand jury was not good practice, and that this Court should disapprove of it.