**Melody PRESTON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3757.**

Supreme Court of Alaska.

Aug. 8, 1980.

---

David C. Steward and Thomas G. Nave, Asst. Public Defenders, Fairbanks, and Brian Shortell, Public Defender, Anchorage, for appellant.

Rhonda F. Butterfield, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE, and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Melody Preston appeals from her conviction of burglary in a dwelling [1] and the superior court's sentence of eight years imprisonment, with three years suspended.

The only direct evidence adduced at trial of Preston's involvement in the burglary itself was presented by an accomplice, Franklin Clay.[2] Franklin testified at trial that on the morning of March 9, 1977, he, Preston, and Robert Clay gave Franklin's wife a ride to her job at the Fairbanks Memorial Hospital. At Robert Clay's suggestion, they then drove to the residence of Charles "Chico" Williams in order to "rip him off." Preston's sister had been staying at the Williams' residence for a short time prior to the burglary and upon departing she failed to return to Mr. Williams the key which she had been using to his house.[3] Franklin stated that when they arrived at Williams' home, Robert produced a set of keys; Robert went to the front door, knocked, and then returned, suggesting that they forget the burglary. Preston commented that Robert was scared. Robert handed the keys over to Franklin, who proceeded to open the door to Williams' home. The three entered and proceeded to remove several items of stereo equipment, two television sets, and a gun. When Franklin attempted to sell the stolen property, Williams discovered its location and informed the police. A search warrant was issued for the residence where Preston, Robert, and Franklin lived, and police found a number of the stolen items scattered in the field behind the house.

Preston's first claim of error on appeal relates to the indictment. Preston's arguments emphasize two factors which she contends demonstrate that the indictment is defective: first, the admission before the grand jury of certain hearsay statements;

---

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

1. At the time of the offense, AS 11.20.080 provided:

 *Burglary in dwelling house.* A person who breaks and enters a dwelling house with intent to commit a crime in it, or having entered with that intent, breaks a dwelling house or is armed with a dangerous weapon in it, or assaults a person lawfully in it is guilty of burglary, and upon conviction is punishable by imprisonment in the penitentiary for not less than one year nor more than 10 years. However, if the burglary is committed at nighttime, it is punishable by imprisonment for not less than one year nor more than 15 years. If a human being is within the dwelling at the time of the burglary during the nighttime or daytime, it is punishable by imprisonment for not less than one year nor more than 20 years.

2. Franklin Clay is the brother of Preston's one-time boyfriend, Robert Clay.

3. It appears from the record that Preston's sister had been expected to pay rent to Williams during her stay with him, but had refused to do so. Williams and Preston's sister were not on the best of terms at the time of her departure.

**598**

and second, the failure of the prosecution to present to the grand jury each of three inconsistent statements made by Franklin Clay to the police.

■■■ The presentation of evidence to a grand jury is governed by Alaska Rule of Criminal Procedure 6(r).[4] Under Rule 6(r), "compelling justification" for the introduction of otherwise inadmissible hearsay evidence before the grand jury must be demonstrated on the record.[5] *See Frink v. State*, 597 P.2d 154, 162–63 (Alaska 1979). In *State v. Gieffels*, 554 P.2d 460, 464–65 (Alaska 1976), we held that "[f]or purposes of interpreting Criminal Rule 6(r) we equate compelling with necessity.[6]

■■■ Prior to the instigation of grand jury proceedings against the Clay brothers and Preston, Franklin Clay asserted his

privilege granted by the fifth amendment of the United States Constitution not to testify before the grand jury.[7] In order to inform the grand jury of the direct burglary evidence against appellant, the prosecutor elected to have Franklin's confession repeated before the grand jury by one of the investigators to whom Franklin gave the incriminating statement.[8] Ordinarily, such evidence would be inadmissible hearsay and, therefore, not competent for use in a grand jury hearing. *State v. Gieffels*, 554 P.2d 460, 463–65 (Alaska 1976).[9] The state's attorney recognized that the offered testimony was hearsay which is subject to the Rule 6(r) compelling justification test.

■■■ Our ruling in the case of *Galauska v. State*, 527 P.2d 459 (Alaska 1974) is controlling on this point. In *Galauska*, after

4. Alaska R.Crim.P. 6(r) provides:
 *Admissibility of Evidence.* Evidence which would be legally admissible at trial shall be admissible before the grand jury. In appropriate cases, however, witnesses may be presented to summarize admissible evidence if the admissible evidence will be available at trial. Hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction. If hearsay evidence is presented to the grand jury, the reasons for its use shall be stated on the record.

5. Alaska R.Crim.P. 6(r) plainly sanctions the presentation of hearsay evidence to a grand jury provided that it "would be legally admissible at trial" or if there is a "compelling justification for its introduction." *See Coger v. State*, 517 P.2d 1403, 1406 (Alaska 1974). Compelling justification is required only for otherwise inadmissible hearsay. *Galauska v. State*, 527 P.2d 459, 464 (Alaska 1974); *State v. Taylor*, 566 P.2d 1016, 1018 (Alaska 1977). Where neither of these two requirements is met, an indictment is still valid if "there was adequate direct testimony to justify the indictment." *Webb v. State*, 527 P.2d 35, 36 (Alaska 1974) (footnote omitted); *State v. Taylor*, 566 P.2d 1016, 1019 (Alaska 1977).
 Insofar as Franklin's testimony was the only direct link between the appellant and the burglary of the Williams home, it is crucial primary evidence of Preston's participation in the transaction. Accordingly, to be admissible in the present action, such evidence must withstand the Rule 6(r) *hearsay* analysis. However, by recognizing that Franklin's statement was the only direct evidence presented of Preston's involvement in the burglary, we do not mean to be understood as suggesting that "[t]here was

nothing before the grand jury other than the statement itself upon which the jury could evaluate the reliability of the testimony." *Galauska v. State*, 527 P.2d 459, 464 (Alaska 1974); *see State v. Skan*, 511 P.2d 1296 (Alaska 1973). Indeed, there was substantial, albeit circumstantial, additional evidence before the grand jury. *See also Taggard v. State*, 500 P.2d 238, 242–43 (Alaska 1972).

6. *See also Adams v. State*, 598 P.2d 503, 508 (Alaska 1979).

7. At the time of the indictments here, Franklin was engaged in plea negotiations with the prosecution. He ultimately agreed to plead guilty to receiving stolen property in exchange for dismissal of the burglary charge against him and, presumably, for his testimony against the others.

8. It is established in this state that a grand jury indictment may be validly based upon the uncorroborated testimony of an accomplice. *Merrill v. State*, 423 P.2d 686, 695 (Alaska), *cert. denied*, 386 U.S. 1040, 87 S.Ct. 1497, 18 L.Ed.2d 607 (1967); *State v. Skan*, 511 P.2d 1296 (Alaska 1973). Even so, we believe that no genuine corroboration issues are presented by this case. Abundant independent evidence which tended to corroborate Franklin's story was presented to the grand jury. *See* note 5 *supra; see also* note 9 *infra*.

9. For discussion of the hearsay problem as it relates to statements by one co-defendant which are sought to be admitted against another co-defendant, *see Galauska v. State*, 527 P.2d 459, 463 n.3 (Alaska 1974).

analyzing a virtually identical grand jury evidence issue, we held that a co-defendant's invocation of the privilege against self-incrimination is a sufficiently compelling justification for the admission of his hearsay statement against another co-defendant during grand jury proceedings. *Id.* at 465. Specifically, we stated:

> Calling Peter [the co-defendant] before the grand jury would have led to the introduction of direct evidence only if Peter incriminated himself. Concern for Peter's substantive rights constituted a compelling reason under Criminal Rule 6(r) for the use of his hearsay statement at the grand jury.

*Id.* at 465. In the case at bar Franklin claimed his fifth amendment privilege, and the grand jury was informed, on the record, of this circumstance. Thus, we conclude that the hearsay evidence concerning Franklin Clay's confession incriminating appellant complied with Criminal Rule 6(r) and was admissible before the grand jury.

During the course of the police investigation of the Williams burglary, Franklin made inconsistent statements to the police on at least three separate occasions. The first statement was apparently made to a detective on the day after the burglary, in the cafeteria of the hospital at which Franklin's wife was employed. In response to the detective's inquiries regarding Franklin's knowledge of the burglary, Franklin professed ignorance of the crime. Later, while the police were at Franklin's home executing search warrants for the stolen property, Franklin indicated his desire to cooperate in the investigation. After leading police to the area in which the stolen property was concealed, Franklin made a statement to investigators which implicated his brother and appellant, but which "didn't say anything" about his own

participation in the burglary. Shortly after making his second statement, Franklin voluntarily proceeded to the police station. At that time he admitted to investigators his involvement in the burglary.

The grand jury was not informed of the two statements Franklin Clay initially gave to the police, but only of his eventual voluntary confession.[10] Preston argues that this selective submission of statements on the part of the prosecutor prevented the grand jury from evaluating the veracity of the hearsay declarant, Franklin.

■ Prior decisions by this court have engendered some degree of confusion regarding the so-called "reliability" of hearsay which is admitted under the compelling justification test of Criminal Rule 6(r). In this case, for example, counsel for appellant appears to have misapprehended the interface between the two-step analysis set forth in *Taggard v. State*, 500 P.2d 238, 242–43 (Alaska 1972), and the "compelling justification" hearsay exception of Criminal Rule 6(r).[11] In *Taggard*, we made the following statement: "When secondary evidence is utilized before the grand jury . . . it should be scrutinized with special care to ensure that it can 'rationally establish facts' sufficient to support an indictment."[12] The issue in *Taggard* revolved around the sufficiency of the evidence supporting the grand jury indictment. The only evidence of Taggard's culpability presented to the grand jury was a single statement made to police by an informant. This statement was subsequently repeated to the grand jury by a police officer. After propounding a test for measuring the sufficiency of the evidence supporting a grand jury indictment, we applied that test and found there to be insufficient evidence to justify an indictment against Taggard. The test provided that:

10. At Preston's trial, Franklin testified that he lied about his own involvement in the burglary because he "was scared" when he made the first two statements. After Preston and Robert were arrested upon the strength of Franklin's accusations, he "felt guilty" and compelled by his conscience to share the blame. Accordingly, Franklin confessed and was himself arrested.

11. We note, in passing, that the *Taggard* decision was handed down prior to the February, 1973 effective date of Alaska R.Crim.P. 6(r).

12. *Taggard v. State*, 500 P.2d 238, 242 (Alaska 1972) (footnote omitted), *quoting Burkholder v. State*, 491 P.2d 754, 758 (Alaska 1971).

The threshold question, which must be determined in all cases involving a challenge to the sufficiency of the evidence supporting a grand jury indictment, is whether the evidence presented a sufficiently detailed account of criminal activity and the defendant's participation in this activity so that 'if unexplained or uncontradicted if would warrant a conviction of the person charged with an offense by the judge or jury trying the offense.' Where hearsay evidence has been introduced, we must also determine whether the credibility of the informant has been sufficiently established so that the grand jury may know how much weight to give to the hearsay testimony.

*Id.* at 242–43 (footnote omitted), *quoting* *State v. Parks*, 437 P.2d 642, 644 (Alaska 1968). As to the first step, there was a detailed account of the burglary presented to the grand jury concerning the goods which were stolen and where they were found. Franklin's statement as related to the grand jury set forth details of Preston's involvement in the burglary. Officer Nielson summarized for the grand jury Franklin's confession in the following manner:

Basically he stated himself, his brother Robert Clay and his brother's girlfriend, Melody Preston, took his car; went to the victim Williams' house between 10:00 and 11:00 in the morning. Melody Preston had a key; she opened the house and the—the three of them stole stereo equipment and a handgun from the house.

It is the second step of the *Taggard* analysis which Preston argues is not met in the case at bar. Preston contends that this case is similar to *Taggard* in which we stated:

13. We agree, as the state noted in its brief at 17–19, that the following facts presented to the grand jury were sufficient independent evidence:

Charles G. Williams, Sr., testified that his house had been burglarized on March 9, and stereo equipment, televisions, and a gun had been taken. Whoever had entered had done so with a key. The only non-family person who had a key was Venita Preston, Melody Preston's sister. Venita had been staying at the Williams' residence up until about two weeks prior to the burglary. Williams knew

The problem in this case, however, is the complete lack of evidence by which the grand jury could evaluate the trustworthiness of the hearsay informant's testimony. The grand jury was not presented with any evidence which would demonstrate the reliability of the particular informant or independently corroborate his story. The prosecutor's unsupported assertion before the grand jury that the informant was reliable hardly qualifies as "independent evidence" of trustworthiness. In addition, the statement by the police officer that the informant's hearsay testimony had been used in a series of narcotics cases before this same grand jury is also inadequate to establish the informant's trustworthiness. The fact that the same informant's uncorroborated hearsay testimony has been repeated to the grand jury in a series of earlier cases does not lend credence to his testimony in a particular case.

*Id.* at 243 (footnote omitted).

In the instant case no one asserted that Franklin Clay was a reliable witness. The prosecution made no effort to place before the grand jury any evidence of Franklin Clay's credibility as a witness. The fact that a statement is incriminating is itself some indication of its reliability, but primarily as to the declarant's own participation in a crime, and much less so as to the involvement of others. It cannot be concluded that the mere making of the statement itself is sufficient indication of Franklin Clay's credibility to meet the test in *Taggard*. However, we think that when this admission is joined with the independent evidence presented as to Preston's participation,[13] the second part of the *Taggard* test is met.[14]

Melody Preston, had met Robert Clay once, but had never met Franklin Clay. Detective Nielsen testified that he had assisted in recovering the stolen items a few days later at 21 Mile Old Richardson Highway, near the residence of Robert and Franklin Clay. Franklin Clay assisted in recovering the property. Melody Preston was also living at that residence, and she and Robert Clay were sharing a room there. Christina Clay testified that she was married to Franklin Clay,

Preston also contends that the prosecutor's introduction of the third statement made by Franklin while withholding his earlier statements violated the prosecutor's duty to present exculpatory evidence.[15]

It is well established that the prosecutor "should seek justice, not simply indictment or conviction." *Frink v. State*, 597 P.2d 154, 165 (Alaska 1979). This court has long held that the prosecutor is obligated to "dis-

---

and knew Melody Preston and Robert Clay. She testified that Melody Preston and Robert Clay were living at her parents' residence, and were using her brother's room. She testified that one day she came home from work, and there was stereo equipment in Preston's and Robert Clay's room. Preston and Robert Clay didn't say anything about where they had gotten the equipment. Christina also caught a glimpse of something that looked like a gun. Christina became aware that the property did not belong to Preston and Robert Clay, and she told them to leave, and to take the stuff with them. Willie Henry testified that he knew the Clay brothers, and was at their residence on Wednesday, March 9, when he saw some stereo equipment in a bedroom at the residence. The brothers did not say where the stuff had come from, but Robert Clay had said it was his stuff from Germany, and had offered to sell it to Henry for $5,000. Robert Clay told Henry the equipment belonged to him (Clay). Henry also testified he saw a gun there, which Robert said was his. Henry also testified that Franklin Clay owned or drove a gray or silver Trans Am. Officer Frank Colletta testified that he stopped a silver Trans Am the day of the burglary when his dispatcher had told him that someone with a CB radio was following someone he suspected of breaking into his house, and described the Trans Am. Mr. Williams had followed the vehicle, and he and Officer Colletta contacted the vehicle at 10th and Barnette. The occupants of the vehicle were Robert Clay, Franklin Clay, Melody Preston, and a Mr. Hamilton. With the consent of the occupants, Mr. Williams looked through the vehicle but did not find his property. A search warrant was executed less than one week later on the premises where Preston and the Clays were residing, and the stolen property was recovered.

14. *Cf. McKinnon v. State*, 526 P.2d 18, 27 (Alaska 1974) (evidence of a hearsay declarant's professional status may justify the introduction of the hearsay statement in appropriate circumstances); *State v. Johnson*, 525 P.2d 532, 535 (Alaska 1974) (validity upheld when the declarant was a store security guard and trained police officer whose statements were substantially corroborated by a testifying eyewitness).

In *Galauska v. State*, 527 P.2d 459, 465 (Alaska 1974) (footnote omitted), we also found the evidence sufficient to support the indictment.

In particular, we noted the following facts in support of the hearsay statements:

> As we have noted, the evidence before the grand jury when taken together presented a detailed account of the crime so as to warrant a conviction if the evidence is unexplained or uncontradicted at trial. ·Peter's statement itself outlined a detailed account of the criminal activity and the participation of both Galauska and Peter. The statement related specific details concerning the manner of the assault and the subsequent abandonment of the injured victim in a ravine.
>
> In addition to Peter's statement the state produced considerable corroborative testimony at the Grand Jury. Testimony was given that Galauska, Peter and Charlie were seen driving toward the highway in Galauska's truck shortly before the assault, and that the truck was found the next morning in Galauska's driveway. Police officers testified to the presence of bloodstains in the truck. The officers further testified to Galauska's admission of having seen Charlie in the bar on the evening of the killing, and related Galauska's claim of loaning his truck to a third party on that evening. The third party testified to the falsity of Galauska's claim. In addition, according to police testimony, it would probably have required two men to carry the inert Peter to the edge of the ravine. As we see it, this evidence was sufficiently corroborative of Peter's story to enable the grand jury to properly weigh the worth of Peter's hearsay statement and was sufficient.

15. Alaska R.Crim.P. 6(q) sets forth one aspect of the exculpatory evidence standard:

> *Sufficiency of Evidence.* When the grand jury has reason to believe that other available evidence will explain away the charge, it shall order such evidence to be produced and for that purpose may require the prosecuting attorney to subpoena witnesses. . . .

We have previously held that "[a] requirement that the prosecutor present exculpatory evidence to the grand jury is implicit in the mandate of Criminal Rule 6(q)." *Frink v. State*, 597 P.2d 154, 165 (Alaska 1979). Patent in this assertion is recognition of the fact that "[t]he grand jury cannot be expected to call for evidence of which it is kept ignorant." *Id.* at 165, *quoting Johnson v. Superior Court*, 15 Cal.3d 248, 124 Cal.Rptr. 32, 34, 539 P.2d 792, 794 (1975).

close to the grand jury any evidence which he knows will tend to negate guilt."[16] The reason for this requirement stems from our view that "before the accused suffers any of the grave inconveniences which are apt to ensue upon the return of a felony indictment, there should be a reliable determination made as to the probability of his guilt." *State v. Gieffels*, 554 P.2d 460, 465 (Alaska 1976). The grand jury functions as a "shield" as well as a "sword" of justice,[17] and "should operate to control abuses by the government and protect the interests of the accused."[18]

 Preston argues that the second statement given by Franklin to investigators inculpating only Preston and Robert Clay was sufficiently inconsistent with Franklin's eventual confession to be considered as exculpatory evidence. In *Frink v. State*, 597 P.2d 154, 165 (Alaska 1979), we quoted with approval language from a California opinion stating that "when a district attorney seeking an indictment is aware of evidence reasonably tending to negate guilt he is obligated . . . to inform the grand jury of its nature and existence . . . ."[19] Thus, we must determine whether the evidence is exculpatory, reasonably tending to negate guilt, or merely inconsistent. In the present case, we find

that we cannot agree with Preston's characterization of Franklin's second statement as exculpatory evidence in so far as that statement concerns her. The mere fact of inconsistency does not automatically convert all such evidence into exculpatory material. If we were to adopt Preston's broad reading of the exculpatory evidence rule, such action would go a long way toward turning "this [grand jury] stage of the proceedings into a mini-trial."[20] It is our intention to avoid such a result and we must, in appropriate cases, defer to a reasonable degree to the discretion of the prosecutor in evaluating the breadth of the evidence which he will present to the grand jury.[21]

 Our evaluation of the evidence which appellant contends was exculpatory convinces us that the single deviation between Franklin's second and third statements concerned his own involvement in the criminal transaction. The consistent thrust of these two statements was that Preston and Robert Clay had been immediately involved in the burglary. The exculpatory quality lay only in the fact that he had made inconsistent statements as to his own participation and, thereby, somewhat lessened his own general credibility. Given the incriminating effect of admitting to

16. *Frink v. State*, 597 P.2d 154, 165 (Alaska 1979), *quoting* American Bar Association, Standards Relating to the Prosecution Function and the Defense Function § 3.6(b), at 89 (Approved Draft 1971); *see generally Coleman v. State*, 553 P.2d 40, 47–52 (Alaska 1976).

17. *See, e. g., United States v. Cox*, 342 F.2d 167, 186 n.1 (5th Cir.) (Wisdom, J., concurring), *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

18. *Coleman v. State*, 553 P.2d 40, 47 (Alaska 1976) (footnote omitted).

19. *Johnson v. Superior Court*, 15 Cal.3d 248, 124 Cal.Rptr. 32, 36, 539 P.2d 792, 796 (Cal. 1975); *see also Gieffels v. State*, 590 P.2d 55, 59 (Alaska 1979).

20. *State v. Gieffels*, 554 P.2d 460, 465 (Alaska 1976).

21. *See Frink v. State*, 597 P.2d 154, 166 (Alaska 1979). In *Frink*, we concluded that "the prosecutor's obligation to present exculpatory evidence to the grand jury does not turn the prosecutor into a defense attorney; the prosecutor

does not have to develop evidence for the defendant and present every lead possibly favorable to the defendant." *See also Cassell v. Texas*, 339 U.S. 282, 302, 70 S.Ct. 629, 639, 94 L.Ed. 839, 855 (1950) (Jackson, J., dissenting) wherein Justice Jackson stated his view of the grand jury function:

[The grand jury's] power is only to accuse, not to convict. Its indictment does not even create a presumption of guilt; all that it charges must later be proved before the trial jury, and then beyond a reasonable doubt. The grand jury need not be unanimous. It does not hear both sides but only the prosecution's evidence, and does not face the problem of a choice between two adversaries. Its duty is to indict if the prosecution's evidence, unexplained, uncontradicted and unsupplemented, would warrant a conviction. If so, its indictment merely puts the accused to trial. The difference between the function of the trial jury and the function of the grand jury is all the difference between deciding a case and merely deciding that a case should be tried.

participation, we find this inconsistency minimally probative of Franklin's veracity or lack thereof. Franklin was thoroughly questioned at trial regarding the prior statements which he made to police.[22] We believe that the prosecutor's failure to introduce before the grand jury Franklin's earlier statements did not violate his duty to present exculpatory evidence;[23] the evidence presented by the prosecutor was reasonably complete and fair in the context of a grand jury proceeding.[24]

Preston's third assignment of error on appeal concerns the trial judge's refusal to grant her motion for a mistrial. Prior to trial, Preston secured an order of the trial court preventing the prosecution from introducing before the jury evidence of Preston's recent conviction for receiving stolen property and her resultant probationary status.[25] During the direct examination of Franklin Clay, the following exchange occurred:

Q. What day was that that you took it [the stolen property] out in the woods?

A. A few days after. Well, whatever day it was that her [Preston's] probation officer came out.

Preston's counsel immediately moved for a mistrial, which was denied. The court informed Preston's counsel he could "either let the matter rest, or you can draft a cautionary instruction and I'll instruct the jury with reference to the matter." He replied, "Well, at this point I imagine it's better to let it rest and just hope that nobody picked up on it."

■■■■ We find no error in this denial. The trial judge is granted discretion in admitting or rejecting evidence of a defendant's prior convictions for a proper purpose.[26] The purpose of the protective order

---

**22.** This case does not present a situation in which "the protective value of the grand jury" is so eroded by the prosecutor's presentation of questionable evidence "as to make it nothing more than an administrative arm of the district attorney's office." *State v. Gieffels,* 554 P.2d 460, 465 (Alaska 1976). Neither does this case manifest a situation in which the state has attempted at trial to "validate an otherwise invalid indictment." *Adams v. State,* 598 P.2d 503, 510 (Alaska 1979).

In *Taggard v. State,* 500 P.2d 238, 243 (Alaska 1972) (footnotes omitted), we stated as follows:

A mere formal defect does not require dismissal of an indictment after the guilt of the defendant has been established at a fair trial. But courts do not hesitate to dismiss an indictment, even after a conviction, when the defect in the indictment is substantial. The conviction must be overturned when an indictment is invalid and the error was properly preserved by a timely objection prior to trial.

**23.** Preston has also raised a claim that she was denied a due process right imposed by the state constitution. In light of our conclusion that the prosecutor did not violate Criminal Rule 6, our holding in *Frink v. State,* 597 P.2d 154, 166 (Alaska 1979) is dispositive. In *Frink,* we held that if the prosecutor did not violate the duty imposed in Alaska R.Crim.P. 6, then the prosecutor has not "violated any constitutionally-imposed duty of disclosure." *Id.* at 166.

**24.** We emphasize, however, that the line between exculpatory evidence and simple incon-

sistent evidence cannot be clearly delineated. Our review must proceed on a case by case basis. Compare *Frink v. State,* 597 P.2d 154 (Alaska 1979) *and Gieffels v. State,* 590 P.2d 55, 59–60 (Alaska 1979) *with Adams v. State,* 598 P.2d 503 (Alaska 1979).

**25.** Preston's earlier conviction for this unrelated offense was the subject of a *per curiam* opinion entitled *Preston v. State,* 583 P.2d 787 (Alaska 1978). We take this occasion to correct an error in that opinion which relates to the present offense. In that opinion, we mistakenly indicated that Preston pleaded guilty to the present burglary charge. 583 P.2d at 788. Preston in fact denied participation in the burglary, stood trial for the offenses charged and was convicted by a jury; she did not plead guilty.

**26.** *See Ladd v. State,* 568 P.2d 960, 968 (Alaska 1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978). Article IV of the Alaska Rules of Evidence deals generally with the admissibility of relevant evidence and sets forth several factors which the trial judge must consider in deciding whether proffered evidence is relevant and otherwise admissible. Rule 403 states:

*Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.* Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time,

was to preclude the jury from improperly considering evidence of Preston's prior conviction for an unrelated offense as bearing upon her guilt in the present case. Although revealing substantive evidence of appellant's earlier conviction as proof of her criminal disposition would clearly violate Alaska Rule of Evidence 404(b),[27] we cannot say that the simple reference at trial to Preston's probation was a substantial violation of the protective order.

■ We also note that this occurred in a seemingly unintentional fashion. There is no evidence of any prosecutorial misconduct which would involve other concerns on review. However, we think that especially when there is an outstanding protective order, the parties should instruct their witnesses not to discuss any forbidden topics. The mention of Preston's probationary status neither informed the jury of the substance of the underlying conviction nor so prejudiced the defense as to demand a mistrial or a finding that the trial court abused its discretion in ruling on the motion.

■ Finally, Preston alleged that the sentence of eight years with three suspended imposed upon her by the trial court was excessive. The maximum permissible sentence which may be imposed upon a person convicted of burglary under circumstances such as those in the present case, is ten years.[28]

At the sentencing proceeding, the superior court was reluctant to characterize Preston as the worst type of offender. The court also considered Preston's positive em-

ployment history and the numerous favorable character recommendations submitted by her friends. However, the superior court found it necessary to discount these factors in light of the countervailing character information provided by other acquaintances of Preston. The court also noted at sentencing that the seriousness of Preston's crimes is escalating, and that a weapon had been involved in the present offense as well as in appellant's prior crime. However, we note that in both crimes, the weapons involved were not used in perpetrating the offenses of which Preston was convicted but were part of the stolen property involved. Thus, we think the sentencing court unduly emphasized this factor in its decision.

■ This was only Preston's second conviction, neither of which involved use of a weapon or any danger to life. The entry here was not forcible. Preston had an excellent employment history, and highly favorable character recommendations from numerous people. At least two people, including her brother, attributed her problems to her tendency to be overinfluenced by those around her. We cannot ignore the fact that the instant offense occurred only four months after Preston was put on probation for receiving stolen property. But we believe that five years' imprisonment followed by a period of three years' probation is not warranted in this case. In our opinion, Preston should not be sentenced to imprisonment for more than three years, followed by a period of five years' probation.[29]

---

or needless presentation of cumulative evidence.

Rule 404(b) reads:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**27.** *See* note 26 *supra*, for the text of Alaska R.Evid. 404(b).

**28.** *See* note 1 *supra*.

**29.** Preston, who is black, also suggests in vague terms that the length of her sentence was motivated by racial bias. However, appellant fails to allege with any particularity in what respect her sentence was racially discriminatory or inspired by racial prejudice. *Johnson v. State*, 607 P.2d 944, 947–48 (Alaska 1980); *Bell v. State*, 598 P.2d 908, 916 (Alaska 1979). With the absence of any specificity in support of a claim of racial bias, appellant has not met the burden of establishing a prima facie case. *Johnson v. State*, 607 P.2d 944, 947–48 (Alaska 1980); *Bell v. State*, 598 P.2d 908, 916 (Alaska 1979); *Campbell v. State*, 594 P.2d 65, 68–69 (Alaska 1979).

The conviction is Affirmed, and the case is Remanded to the superior court for re-sentencing consistent with this opinion.

BOOCHEVER, Justice, concurring.

I believe that under certain circumstances the confession of an informant may furnish sufficient indicia of credibility to meet the test set forth in *Taggard v. State*, 500 P.2d 238 (Alaska 1972).

MATTHEWS, Justice, dissenting.

I do not believe the superior court was clearly mistaken in imposing a sentence of eight years with three suspended. This was appellant's second felony, which she committed while on probation for her first. I would affirm the judgment in its entirety.