**STATE of Alaska, Appellant,**

v.

**Neil Michael CAMERON, Appellee.**

No. A–8785.

Court of Appeals of Alaska.

June 3, 2005.

Kenneth J. Diemer, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellant.

Wayne Anthony Ross, Ross & Miner, P.C., Anchorage, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Alaska Criminal Rule 6(p) states that "the grand jury has no duty to hear evidence on the behalf of the defendant, [but] it may do so." In this case, the defendant notified the prosecutor's office that he wished to appear before the grand jury and testify to a particular exculpatory version of the episode under consideration. The prosecutor did not apprise the grand jurors of the defendant's request, and the grand jury subsequently indicted the defendant without hearing the defendant's testimony.

We must decide whether, under these circumstances, a prosecuting attorney has a duty to forward the defendant's request to the grand jurors so that they, themselves, can decide whether they wish to hear the defendant's testimony.

Alaska Criminal Rule 6(q), as interpreted in *Frink v. State*, 597 P.2d 154 (Alaska 1979), already obliges prosecutors to present exculpatory evidence to the grand jury. But, for this purpose, the term "exculpatory" has been defined narrowly; it refers only to evidence that "tends, in and of itself, to negate the defendant's guilt".[1] For the reasons explained here, we conclude that this remains the proper scope of a prosecutor's duty to apprise the grand jury of evidence potentially favorable to the defendant. Criminal Rule 6(p) imposes no additional duty on a prosecutor to apprise the grand jury of evidence favoring the defendant—even if this evidence consists of the defendant's own proposed testimony.

In the present case, the defendant's proposed testimony did not, in and of itself, tend to negate the defendant's guilt. We therefore conclude that the prosecutor was not required to notify the grand jury that the defendant wished to offer this testimony.

*Underlying facts*

Shortly before midnight on October 15, 2003, Brian and Tamara Walker, the owners of Acme Towing and Recovery, drove their

---

1. *Cathey v. State,* 60 P.3d 192, 195 (Alaska App. 2002), quoting *State v. McDonald,* 872 P.2d 627, 639 (Alaska App.1994).

tow truck to the residence of Neil Michael Cameron; the Walkers had come to repossess Cameron's Chevy Suburban. While Mr. Walker was preparing to hitch the Suburban to the tow truck, Cameron came out of his house, armed with an assault rifle. Cameron pointed this weapon at the Walkers and told them that they had "three seconds" to leave his property. The Walkers got back into their tow truck and drove away. They then reported this incident to the police. A short time later, the police went to Cameron's residence, interviewed him, and then arrested him on two counts of third-degree assault.

Because third-degree assault is a felony,[2] the district attorney's office was obliged to obtain a grand jury indictment to prosecute these charges.[3] Before the grand jury met to consider Cameron's case, Cameron's attorney notified the district attorney's office that Cameron wished to testify at the grand jury hearing. According to the defense attorney, Cameron would testify that he had indeed threatened the Walkers, but that he had done so because he was "attempting to prevent a nighttime trespass on his property and what appeared to be [the] theft of his vehicle".

The assistant district attorney handling Cameron's case did not respond to Cameron's request, nor did he apprise the grand jury that Cameron wished to testify.

The grand jury heard testimony from three witnesses: the Walkers, and a police officer who went to Cameron's house and interviewed him about the incident. According to this police officer, the Walkers' tow truck was clearly marked with their towing company logo, and the Walkers' attempt to hitch the Suburban to their tow truck occurred in a well-lit area in plain view of Cameron's house. Moreover, Cameron admitted to the officer that he knew that the Suburban could be repossessed. Based on this testimony, the grand jury indicted Cameron for third-degree assault.

Cameron asked the superior court to dismiss this indictment because the prosecutor failed to apprise the grand jurors of Cameron's request to appear before them and testify. Cameron conceded that he had no right to demand to testify before the grand jury. However, Cameron contended that once he notified the district attorney's office that he wished to testify, the prosecutor had no authority to unilaterally decide not to allow Cameron to testify. Rather, Cameron argued, the prosecutor had a duty to inform the grand jurors of Cameron's request, so that the grand jurors themselves could decide whether they wished to hear from him.

Superior Court Judge Michael L. Wolverton agreed with Cameron that, after a putative defendant notifies the district attorney's office of their desire to testify before the grand jury, it is the grand jury—and not the district attorney's office—who must decide whether to allow the defendant to testify. Thus, Judge Wolverton concluded, a prosecutor is duty-bound to forward the defendant's request to the grand jury and to let the grand jurors decide whether they wish to hear from the defendant. Because the prosecutor in Cameron's case had not done this, Judge Wolverton dismissed Cameron's indictment.

The State now appeals this ruling, and Cameron defends the superior court's dismissal of the indictment on two bases.

Cameron argues that his proposed testimony was exculpatory evidence, and that therefore the prosecutor violated Alaska Criminal Rule 6(q), as interpreted in *Frink*, by failing to apprise the grand jury of Cameron's proposed testimony.

(This was not the rationale that Judge Wolverton relied on when he dismissed the indictment, but Cameron, as the appellee, may defend the superior court's decision on any basis revealed by the record.[4])

Cameron also argues that, regardless of whether his proposed testimony constituted

---

**2.** *See* AS 11.41.220(d).

**3.** *See* Alaska Constitution, Article I, § 8, and Alaska Criminal Rule 7(a)-(b).

**4.** *Torrey v. Hamilton*, 872 P.2d 186, 188 (Alaska 1994); *Demoski v. New*, 737 P.2d 780, 786 (Alaska 1987); *Millman v. State*, 841 P.2d 190, 195 (Alaska App.1992); *Russell v. Anchorage*, 626 P.2d 586, 588 n. 4 (Alaska App.1981).

exculpatory evidence for purposes of Criminal Rule 6(q), the prosecutor violated Criminal Rule 6(p) by failing to apprise the grand jury that Cameron wished to testify, so that the grand jurors could decide whether they wished to hear from Cameron.

*Was Cameron's proposed testimony "exculpatory evidence" for purposes of the Frink rule?*

■ Alaska Criminal Rule 6(q) states: "When the grand jury has reason to believe that other available evidence will explain away the charge, it shall order [this] evidence to be produced and for that purpose may require the prosecuting attorney to subpoena witnesses."

■ On its face, this provision of Criminal Rule 6(q) seems to place a duty on the grand jury rather than on the prosecutor. But in *Frink v. State,* our supreme court interpreted the rule to mean that a prosecutor has a duty to apprise the grand jury of "evidence [that] will explain away the charge":

A requirement that the prosecutor present exculpatory evidence to the grand jury is implicit in the mandate of Criminal Rule 6(q). The grand jury cannot be expected to call for evidence of which it is kept ignorant. The vital function of the grand jury is protection of the innocent against oppression and unjust prosecution. The grand jury cannot fulfill this function unless it hears evidence tending to refute, as well as establish, guilt. It is the prosecutor who mainly presents evidence to the grand jury, and if the prosecutor does not present exculpatory evidence to the grand jury, it probably will not hear such evidence.

*Frink,* 597 P.2d at 165 (citations, footnotes, and internal quotations omitted).

■ At the same time, however, the supreme court indicated that the prosecutor's duty to present exculpatory evidence to the grand jury did not encompass a duty to present all evidence tending to cast doubt on the government's case:

[T]he prosecutor's obligation to present exculpatory evidence does not turn the prosecutor into a defense attorney; the prosecutor does not have to develop evidence for the defendant [or] present every lead possibly favorable to the defendant.

*Id.* at 166. The following year, in *Preston v. State,* 615 P.2d 594 (Alaska 1980), the supreme court explained that this narrow definition of "exculpatory evidence" was intended to prevent grand jury proceedings from turning into a "mini-trial".[5]

In our own cases interpreting *Frink* and *Preston,* we have followed the principle that evidence is "exculpatory" for purposes of Criminal Rule 6(q) and the *Frink* rule only if "[the] evidence … tends, in and of itself, to negate the defendant's guilt".[6]

■ This narrow definition strikes a balance between the grand jury's two main functions. A grand jury is to authorize the trial of a defendant when the government has established a probability of the defendant's guilt.[7] But at the same time, the grand jury is to shield a defendant from trial when, in the words of *Frink,* the defendant has been subjected to "unjust prosecution". The facts of Cameron's case illustrate a situation in which these two goals might appear to conflict.

Taking the grand jury evidence and the inferences to be drawn from it in a light favorable to the State's case, the State established a probability of Cameron's guilt—a probability that Cameron understood that the Walkers had come to repossess the vehicle, and that he therefore committed assault when he threatened them with a rifle. According to the State's evidence, the Walkers were driving a tow truck that had a "light bar" on top of the cab, and their truck was clearly marked with their company logo. The Suburban that the Walkers had come to repossess was parked at the foot of Camer-

---

5. *Preston,* 615 P.2d at 602.

6. *Cathey v. State,* 60 P.3d 192, 195 (Alaska App. 2002); *State v. McDonald,* 872 P.2d 627, 639 (Alaska App.1994). *Accord, Hughes v. State,* 56 P.3d 1088, 1090 (Alaska App.2002); *Mustafoski v. State,* 954 P.2d 1042, 1045 (Alaska App.1998).

7. *Sheldon v. State,* 796 P.2d 831, 836–37 (Alaska App.1990).

on's front stairs, and the Walkers were in the process of hitching the vehicle to their tow truck when Cameron came out of the house and stood at the top of the stairs, some six feet above them. The police officer who visited Cameron's house testified that anyone standing at the top of the stairs would have been able to see over the top of the Suburban and observe the tow truck with its light bar on top.

But Cameron was apparently willing to testify under oath that he did not understand the Walkers' purpose, and that he thought that the Walkers were car thieves. Assuming that neither the State's position nor Cameron's position is implausible on its face, should a grand jury confronted with this type of factual dispute attempt to resolve it for themselves? Or should the grand jurors leave that task for a trial jury?

We conclude that the question of Cameron's state of mind when he threatened the Walkers with his rifle is the type of issue that should be left to the trial jury. We derive this conclusion from the historical function of the grand jury, and from our supreme court's admonition that grand jury proceedings are not intended to be a mini-trial.

Under English common law, the grand jury normally heard only the case against the defendant. William Blackstone, in his *Commentaries on the Laws of England*, explained that the grand jury heard only the prosecution's side of the case because "the finding of an indictment is only in the nature of ... an accusation, which is afterwards to be tried and determined; and the grand jury are only to enquire ... whether there is sufficient cause to call upon the [person] to answer it." [8]

Alaska has altered this common-law rule. Our Criminal Rule 6(q), as interpreted in *Frink*, requires the grand jury to hear—and the prosecutor to present—evidence which, in and of itself, tends to negate the defendant's guilt.

One could argue that Cameron's proposed testimony directly negated his guilt: Cameron was prepared to testify that he did not know that the Walkers had come to repossess his vehicle, and that he believed instead that they were attempting to steal it. This proposed testimony was certainly "exculpatory" as that word is normally used.

However, Cameron did not dispute the essential facts of the encounter—in particular, his act of threatening the Walkers with his assault rifle and forcing them to leave his property. The disputed issue was Cameron's state of mind when he did so.

To resolve this issue, the grand jury would have to weigh the competing inferences that could be drawn from the circumstances of the encounter, and the grand jury would also have to assess the personal credibility of the witnesses who testified about this encounter.

Our supreme court has declared that Criminal Rule 6(q) was not intended to turn grand jury proceedings into a mini-trial of this sort. Other courts with analogous statutes or rules have also construed them to avoid such a result. For example, in *State v. Evans*, 352 N.J.Super. 178, 799 A.2d 708 (2001), the Appellate Division of the New Jersey Superior Court ruled that a notarized letter from a co-defendant, asserting the defendant's innocence, did not constitute "clearly exculpatory" evidence for grand jury purposes. The court explained:

> "Clearly exculpatory" evidence ... must carry [its own] indicia of reliability ... [so that it] is capable of complete consideration by the grand jury without the need of any extrinsic information also being supplied.
>
> "Clearly exculpatory" evidence is also evidence which does not require the grand jurors to engage in any extensive weighing of credibility factors that could substantially affect the value of the evidence. Any evidence that requires such a process would serve to alter the well-recognized

---

8. Sir William Blackstone, *Commentaries on the Laws of England* (First Edition, Clarendon Press, Oxford, 1765–69), Fourth Book, "Of Public Wrongs", Chapter 23, "Of the Several Modes of Prosecution", p. 300.

The complete text of this first edition of the *Commentaries* is available online from the Yale University Law School's "Avalon Project". *See* http://www.yale. edu/lawweb/avalon/ blackstone/blacksto .htm

function of the grand jury, transforming it from an accusative [body] to an adjudicative . . . body.

*Evans,* 799 A.2d at 717–18.

Based on these considerations, we conclude that Cameron's proposed testimony was not the type of exculpatory evidence whose presentation is required by Criminal Rule 6(q).

*Even though Cameron's proposed testimony was not "exculpatory evidence" for purposes of Criminal Rule 6(q), was the prosecutor nevertheless obliged to inform the grand jurors of Cameron's desire to testify, and to let the grand jurors decide whether to hear his testimony?*

■ Alaska Criminal Rule 6(p) declares: "Although the grand jury has no duty to hear evidence on the behalf of the defendant, it may do so." In *Frink,* the Alaska Supreme Court construed Criminal Rules 6(p) and 6(q) as a complementary pair: together, the two rules mean that "the grand jury may hear evidence on behalf of the defendant, [but the grand jury] has no duty to do so, . . . except to the extent required by Criminal Rule 6(q)." [9]

In the preceding section of this opinion, we concluded that Cameron's proposed testimony was not the kind of exculpatory evidence whose presentation is required by Criminal Rule 6(q). Thus, the grand jury had no obligation to hear Cameron's testimony. However, under Criminal Rule 6(p), the grand jury had the *discretion* to allow Cameron to present his explanation of his actions.

In *Frink,* the supreme court held that even though Criminal Rule 6(q) is worded so as to impose a duty on the *grand jury* to order the production of exculpatory evidence, that rule implicitly imposes a correlative duty on the *prosecutor* to present the exculpatory evidence to the grand jury, or at least to inform the grand jury of its existence and its nature—for "[t]he grand jury cannot be expected to call for evidence of which it is kept ignorant". [10]

In Cameron's case, Judge Wolverton interpreted Criminal Rule 6(p) in a similar manner. That is, even though Rule 6(p) speaks only of the grand jury's discretionary power to hear evidence on behalf of the defendant, Judge Wolverton concluded that Rule 6(p) imposes a duty on prosecutors: when a prosecutor knows that the defendant wishes to present evidence to the grand jury, Rule 6(p) imposes a duty on the prosecutor to notify the grand jury of the evidence that the defendant wants to present, and to let the grand jury decide whether it wishes to hear this evidence.

In reaching this conclusion, Judge Wolverton relied on the supreme court's decision in *Webb v. State,* 580 P.2d 295 (Alaska 1978). *Webb* is the only reported Alaska case, other than *Frink,* to discuss Criminal Rule 6(p).

The defendant in *Webb* was charged with being an accessory after the fact to murder—conduct that would now be "hindering prosecution in the first degree" under AS 11.56.770. *Webb* contended that he had helped to cover up the murder only because the murderers threatened to kill him too.[11] Webb notified the grand jury prosecutor that he wished to appear before the grand jury and present this defense of duress.[12] (The supreme court's opinion does not explain whether this defense would have been presented through Webb's own testimony, or the testimony of others, or both.) However, Webb was indicted without being allowed to present his defense to the grand jury.

On appeal, Webb argued that his indictment was invalid because the prosecutor refused to let him present his defense to the grand jury. The supreme court rejected this claim because it was not supported by the facts of the case. The record showed that the prosecutor informed the grand jury of Webb's request, and it was the grand jurors who decided that they did not wish to hear Webb's explanation of his conduct.[13] In the supreme court's words, "The grand jury transcript len[t] no support whatever to

9.  *Frink,* 597 P.2d at 165 n. 18.

10.  *Id.* at 165.

11.  *Webb,* 580 P.2d at 296–97.

12.  *Id.* at 299.

13.  *Id.*

[Webb's] claim that it was the prosecutor who prevented the grand jury from hearing Webb."[14]

Judge Wolverton interpreted *Webb* as meaning that the indictment would indeed have been invalid if the prosecutor had failed to inform the grand jurors of Webb's desire to present a duress defense. But the supreme court did not say this. Moreover, given the facts of *Webb*, it was not necessary for the supreme court to decide this question of law. We read the *Webb* decision as saying only that, even if Criminal Rule 6(p) were interpreted to require the prosecutor to forward Webb's request to the grand jury, Webb would not be entitled to relief—because the prosecutor did just that.

Now, in Cameron's case, we are directly confronted with the legal issue that the supreme court did not have to decide in *Webb:* When a defendant (or the defendant's attorney) informs the prosecutor of their desire to present evidence to the grand jury, does Criminal Rule 6(p) implicitly impose a duty on the prosecutor to notify the grand jury and to let the grand jurors decide whether to hear this evidence?

Cameron asks us to construe Rule 6(p) to mean that, whenever the target of a grand jury proceeding indicates the desire to present a defense (either personally or through the testimony of others), the prosecutor is obliged to initiate a conversation with the grand jurors and ask them to decide whether they wish to hear the proposed defense testimony. But Rule 6(p) merely states that the grand jury may hear evidence on the behalf of the defendant. The rule does not specify whether it is completely up to the grand jurors to decide whether they wish to seek input from the defendant, or whether instead the defendant has a right to force the grand jurors to discuss this issue and expressly vote on whether to hear evidence favoring the defendant.

If we construed Criminal Rule 6(p) in the manner Cameron proposes, this would be a departure from the common law. As explained above, grand juries traditionally heard only the government's side of the case—because the grand jury has no power to decide guilt or innocence, but only to decide whether someone should be brought to trial. This rule was reiterated in one of America's earliest reported court decisions on this subject, *Respublica v. Shaffer.*[15]

In *Shaffer,* a representative of the defendant gave the grand jury a list of eleven witnesses who were purportedly ready to offer exculpatory testimony. The attorney general sought a ruling from the chief justice of Pennsylvania as to whether he was obliged to summon these defense witnesses to the grand jury. The chief justice responded:

> Were the proposed examination of witnesses, on the part of the Defendant, to be allowed, the long established rules of law and justice would be at an end.... If [the grand jury were] to enquire, not only upon what foundation the charge is made, but, likewise, upon what foundation it is denied, [the grand jury would], in effect, usurp the jurisdiction of the Petty Jury [and] supercede the legal authority of the court....

*Respublica v. Shaffer,* 1 U.S. (1 Dall.) at 236, 1 L.Ed. at 116, 1788 WL 181.

This rule continues to govern grand jury practice in most American jurisdictions that require prosecution by indictment. For instance, the Supreme Court of Hawai'i recently declared that "[t]he function of a grand jury to protect against unwarranted prosecution does not entail a duty to weigh the prosecution's case against that of the defense[.]"[16] And the United States Supreme Court has rejected various attempts "[to] alter the grand jury's historical role [by] transforming it from an accusatory body [into] an adjudicatory body" (*i.e.,* a body that sits to determine guilt or innocence).[17]

Moreover, prosecutors have traditionally had sole discretion to choose the evidence to

---

14. *Id.*

15. 1 U.S. (1 Dall.) 236, 1 L.Ed. 116, 1788 WL 181 (Ct. of Oyer & Terminer, Phila. 1788).

16. *State v. Wong,* 97 Hawai'i 512, 40 P.3d 914, 920 (2002).

17. *United States v. Williams,* 504 U.S. 36, 51, 112 S.Ct. 1735, 1744, 118 L.Ed.2d 352 (1992).

be presented to the grand jury.[18] As we discussed in the preceding section of this opinion, Alaska Criminal Rule 6(q) alters the grand jury's role, and the prosecutor's traditional evidentiary discretion, by requiring the presentation of exculpatory evidence. But Criminal Rule 6(q) contains an express directive to the grand jury: "When the grand jury has reason to believe that other available evidence will explain away the charge, it *shall* order [this] evidence to be produced". In contrast, the rule at issue in Cameron's case, Criminal Rule 6(p), does not direct the grand jury to do anything, nor does the rule clearly alter grand jury practice in the manner Cameron suggests (*i.e.*, by giving defendants the power to initiate grand jury discussions on the question of whether to hear defense evidence).

Cameron points out that the United States Department of Justice has adopted a policy which calls upon United States Attorneys to allow the targets of grand jury investigations to testify before the grand jury upon request, so long as the target's testimony will not delay the investigation or otherwise burden the grand jury.[19] But this is merely the policy decision of one prosecuting agency. Even assuming that we shared the Department of Justice's views about the wisdom of such a policy (an issue on which we express no opinion), we would not have the authority to force Alaska prosecutors to follow this same policy simply because we thought it might be a good thing to do.

Cameron also points out that some half-dozen states have enacted statutes or court rules that explicitly give potential defendants the right to testify before the grand jury. For example, New Mexico Statute 31–6–11(C) declares that the targets of grand jury investigations shall be notified of their target status and shall be given an opportunity to testify, if they desire to do so, unless the presiding judge determines (by clear and convincing evidence) that notification of the

target may result in the target's flight, or may endanger other persons, or may give rise to an attempt to obstruct justice.

But the existence of such laws in a handful of states underscores the difficulty in Cameron's position.

At common law, the grand jury had no obligation to consider evidence on behalf of the defendant. This type of obligation was seen as inconsistent with the grand jury's function—because the grand jury was not to weigh the prosecution's case against the defendant's case, but rather to decide whether the prosecution's case was sufficiently well-founded to warrant a trial. A few states, such as New Mexico, have enacted laws that expressly alter the grand jury's obligation in this regard. But the Alaska Supreme Court (which has a legislative function with regard to court rules[20]) has not done so—or, at least, has not clearly done so.

■ Cameron's contention in this appeal—that the grand jury must be apprised of a defendant's wish to present evidence, and that the grand jurors must then affirmatively decide whether to hear the proposed defense evidence—is based on one proposed interpretation of a court rule that is, at best, ambiguous on this point. Moreover, Cameron's proposed interpretation of Criminal Rule 6(p) would alter the common-law rule. When courts are presented with a question concerning the proper construction of a statute or rule that potentially modifies the common law, courts should interpret the statute or rule so as to preserve the pre-existing common law unless the legislature—or, in this case, the supreme court—has clearly indicated its purpose to change that law.[21] This rule of construction leads us to reject Cameron's proposed interpretation of Rule 6(p).

It may be that Cameron's suggested rule would be a beneficial amendment to Alaska's

---

**18.** *See Wurster v. State,* 708 N.E.2d 587, 593 (Ind.App.1999).

**19.** *United States Attorneys' Manual* (August 2002), § 9–11.152.

**20.** *See* Alaska Constitution, Article IV, § 15.

**21.** *Lee v. Anchorage,* 70 P.3d 1110, 1112–13 (Alaska App.2003).

current grand jury law. But it would be an amendment. Cameron's suggested rule of procedure is not required by any existing Alaska statute, rule, or appellate court decision.

Accordingly, we REVERSE the decision of the superior court, and we reinstate Cameron's indictment.