117 N.J. Super. 405 (1971)
285 A.2d 42
PETER SHUCHTER, INDIVIDUALLY, AND NEW JERSEY S.A.N.E., 2 ERIE STREET, MONTCLAIR, N.J., PLAINTIFFS-APPELLANTS,
v.
DIVISION ON CIVIL RIGHTS, DEPARTMENT OF LAW AND PUBLIC SAFETY, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1971.
Decided December 13, 1971.
*406 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. Arnold K. Mytelka argued the cause for appellants (Messrs. Clapp & Eisenberg, attorneys; Mr. Michael A. Backer, of counsel).
Mr. Alfred L. Nardelli, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by MATTHEWS, J.A.D.
On this appeal from the Division on Civil Rights we are asked to decide whether the word "creed," as used in the Law against Discrimination *407 (N.J.S.A. 10:5-1 et seq.), includes beliefs other than those relating to a man's religion  i.e., his relationship or lack of relationship with a diety.
Plaintiff S.A.N.E. is a pacifist organization which expounds certain political, ethical and philosophical beliefs, including opposition to the Vietnam War. It has been described as having been in the forefront of the peace movement in this State. Plaintiff Shuchter is the project director of the New Jersey branch of the organization. S.A.N.E. sought to rent a storefront in the Town of Montclair but was denied that opportunity, it is alleged, because the owner was totally unsympathetic to the organization's beliefs. The Division on Civil Rights dismissed plaintiffs' complaint, determining that it had no jurisdiction over discrimination because of political belief. We affirm.
We see no purpose in discussing the dictionary or other meanings of the word "creed," which undisputedly has its root in the Latin verb credo, meaning "I believe." Meanings to be attributed to the word "creed" because of its origin and traditional breadth of usage are irrelevant to our inquiry. The question directly in point is what the Legislature intended when it employed the word in the statute in question.
A review of the history of our civil rights legislation dating back to L. 1884, c. 219, convinces us that the use of the word "creed" in that kind of legislation by the Legislature (it was introduced into our laws in L. 1921, c. 174, without comment) contemplates the holding of certain beliefs with respect to religious principles. Our conclusion is further buttressed by a review of the proceedings of the Constitutional Convention of 1947  specifically those areas dealing with the Bill of Rights. It is significant to us that the Convention was held within two years of the enactment of L. 1945, cc. 168 to 174, which created the Division Against Discrimination and broadened all of our civil rights laws to include national origin, ancestry and creed. Unquestionably, the object of our laws against discrimination is to further *408 our constitutional provision guaranteeing to each citizen civil rights. N.J.S.A. 10:5-2. The constitutional provision in question, N.J. Const. (1947), Art. I, par. 5 provides:
No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin. [Emphasis added]
We recognize that the word "creed" has more recently been accepted to embrace meanings other than those of a religious context. See e.g., Webster's New International Dictionary (3d ed. 1961 unabridged). We do not believe, however, that it is our function as a reviewing court to expand a legislative enactment because of new trends in the definition of a word. Whether discrimination on the basis of moral, philosophical, social or political values should be condemned or permitted among the citizens of this State is a question most properly answerable by the Legislature. The problems involved are myriad and seemingly insoluble by the judiciary. For example, should it be unlawful for the owner of a meeting hall who is of one political persuasion to bar the rental of that meeting hall to a group of the opposite political persuasion simply because of political belief?
The order of the Division on Civil Rights dismissing plaintiffs' complaint because of lack of jurisdiction is affirmed. No costs.