Earl Lake JOHNSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 3899.

Supreme Court of Alaska.

March 7, 1980.

Max F. Gruenberg, Jr., Anchorage, for appellant.

Patrick J. Gullufsen, Asst. Atty. Gen., Daniel W. Hickey, Chief Prosecutor, Avrum M. Gross, Atty. Gen., Juneau, for appellees.

Niel Thomas, Executive Director, Alaska State Commission for Human Rights as amicus curiae.

OPINION

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER and MATTHEWS, JJ., and STEWART, Superior Court Judge.

BOOCHEVER, Justice.

In this sentence appeal, Earl Johnson contends that imposition of sentences for both possession and sale of heroin violates double jeopardy. He further claims that his sen-

tence of seven years' imprisonment with two years suspended on each count, to run concurrently, was excessive, and the result of racial bias. We reject these claims and affirm the judgment of the superior court.

## I. DOUBLE JEOPARDY

Johnson was indicted on two counts. The first count alleged that on or about April 26, 1977, Johnson unlawfully possessed heroin in violation of AS 17.10.010.[1] The second count alleged that on or about the same day Johnson unlawfully sold heroin in violation of AS 17.10.010. The evidence presented at trial showed that Rondi Baker, a police informant, went to Johnson's apartment under a prearranged plan to buy heroin. Both Johnson and a co-defendant, Shelly Gunnerud, were present at the apartment. Baker testified that she gave Gunnerud a $100.00 bill which had its serial number recorded, and that Johnson gave her a balloon of heroin. Baker left with the heroin she had bought and gave it to a police officer. Several hours later, the police obtained and executed a search warrant on Johnson's apartment. The officers recovered the marked bill and four of six balloons of heroin that the defendants attempted to flush down a toilet.

Johnson's defense at trial was that the evidence against him had been rigged by the police informant, Rondi Baker. According to his testimony, Baker brought the balloons of heroin to the apartment and gave them to Johnson for safekeeping. He testified she gave him the marked one-hundred-dollar bill in order to get change in smaller bills, not to buy heroin.

Johnson was convicted on both counts of the indictment. The judge imposed two concurrent sentences of seven years with two years suspended on each count. Johnson contends that the two concurrent sentences constitute constitutionally impermissible double punishment.

The essence of his argument is that there is no way to determine if the jury found him guilty of possession simultaneously with the sale, or whether the jury found him guilty of possession later at the time the police entered the apartment. Johnson claims that if the jury found him guilty of possession at the time of the sale, the sentence constituted illegal double punishment under the authority of *Whitton v. State*, 479 P.2d 302 (Alaska 1970).[2] Johnson apparently concedes that if the jury found him guilty of possession at a time different from the sale he may be sentenced for the two separate offenses. *Davis v. State*, 566 P.2d 640 (Alaska 1977).

There is no indication that Johnson ever objected to the form of indictment until he filed his points on appeal. In his brief, Johnson does not suggest that he asked for a bill of particulars, nor did he suggest a curative instruction. Johnson has not pointed to any other indication of any objection in the record that might have notified the trial judge of possible error. Consequently, we must determine if there was plain error.[3]

In his opening argument to the jury, the state's attorney noted:

> The indictment—Count I is the possession charge; Count II is the sale charge. In fact, the sale took place first; the possession charge arose out of events which happened later the same day as the sale.

1. AS 17.10.010 provides:
   *Acts prohibited.* It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner or compound any narcotic drug except as authorized in this chapter.

2. In *Whitton* we adopted a test for determining when criminal acts or intent would be different enough so that a defendant could be sentenced for more than one offense. Possessing and selling the same balloon of heroin are obviously very closely related offenses, such that the dif-

ference in intent or conduct are insignificant "in relation to the social interests involved." 479 P.2d at 312.

3. Criminal Rule 47(b) provides:
   Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
   In *Robinson v. State*, 593 P.2d 621, 623 (Alaska 1979), and *Webb v. State*, 580 P.2d 295, 298–99 (Alaska 1978), we held that alleged defects in the form of an indictment were not plain error.

Two probation officers and three police officers who participated in the raid on Johnson's apartment testified at length concerning the search and seizure of evidence. The four balloons of heroin recovered from the toilet were introduced into evidence.

The jury necessarily rejected Johnson's entrapment defense, or it would not have been possible to have found him guilty of selling heroin. Johnson's testimony was the only evidence offered to rebut the state's evidence of Johnson's later possession. Consequently, it is not possible that the jury believed Johnson's defense at any time. The jury could not have rejected Johnson's testimony to convict him of the sale, yet accept it to find him innocent of the later possession.

■ Given the prosecutor's comment correcting any possible ambiguity in the indictment, the overwhelming evidence of the later possession, and the obviously fabricated nature of Johnson's defense, it is hardly conceivable that the jury intended to acquit Johnson of the later possession. In short, the claimed error in the indictment was "not obviously prejudicial," *Gilbert v. State*, 598 P.2d 87, 92 (Alaska 1979), and therefore there was no plain error.

## II. EXCESSIVE SENTENCE

Johnson claims that the trial judge impermissibly presumed he was engaged in other crimes peripheral to drug trafficking.

Reading the transcript in its entirety, however, it does not appear that the judge was accusing Johnson in particular of engaging in peripheral illegal activity. At one point, the judge specifically noted that Johnson had "got this far in his life without too much involvement with the law." The judge also noted that Johnson was not a professional criminal. In his remarks, the judge condemned heroin addiction in general when referring to "peripheral activity."

Specifically, the judge in Johnson's case was concerned that

[i]f I thought that Mr. Johnson was merely selling this stuff in order to satisfy his own habit or his own addiction, then I think the sentence would be less. But, I am not satisfied of that fact.

It was unclear whether Johnson was an addict at the time of his arrest. There was evidence in the record that indicated Johnson had been selling drugs for some time. The police informant testified she had bought heroin from Johnson about two years before the arrest that led to this conviction. In the past, Johnson had used three different aliases. He had identity cards made out with two of them. The police testified that there were six balloons of heroin, four of which were recovered. The apartment was equipped with an anti-bugging device which emitted a shrill sound when someone used a radio transmitter near it. Johnson had a pistol, $635.00 in cash, three scales and other drug paraphernalia in his apartment.

The sentencing judge assumed that Johnson would not have gone to the trouble of packing the heroin in balloons unless he intended to sell it, and that a substantial amount of heroin was involved. In *Waters v. State*, 483 P.2d 199, 201 (Alaska 1971), we categorized drug offenses into four declining levels of seriousness.[4] Johnson would fit somewhere between categories one and two on the *Waters* scale. He was not a "titan" of the narcotics business, but he was more than a "mere user." *Id.* In the judge's opinion, he had more heroin than "small quantities for sale."

In *Tarnef v. State*, 492 P.2d 109 (Alaska 1971), and *Keller v. State*, 568 P.2d 1014 (Alaska 1975), where the defendants had no prior convictions, we sustained sentences for drug offenses which involved periods of

4. The four categories are:
1. Smuggling or sale of large quantities of narcotics or possession of large quantities for sale.
2. Smuggling or sale of small quantities of narcotics or possession of small quantities for sale.

3. Possession of narcotics without intent to sell.
4. Marijuana offenses.
483 P.2d at 201.

imprisonment equal to or longer than the sentence here.[5] *Huff v. State*, 568 P.2d 1014 (Alaska 1977), does not support a reduction in Johnson's sentence. Huff received two concurrent eight-year sentences for two counts of selling heroin. On appeal, we remanded the case for resentencing with instructions that Huff not be sentenced to more than four years. The shorter sentence was ordered in part to avoid a double jeopardy problem. At one point the trial judge had sentenced Huff to two consecutive four-year sentences which he later upgraded to concurrent eight-year sentences. We held that Huff's drug offenses did not fit into a category deserving of a prison term of more than four years, noting:

> The sales of heroin he made were for the sole purpose of being paid in kind by the dealer above him in order that he could continue to satisfy his addiction to heroin by getting the drug for his own use. He was what he described as the "middleman" and not the non-addictive seller of narcotics in substantial quantities who makes a considerable profit out of this illegal enterprise.

568 P.2d at 1017. Those considerations do not appear applicable to Johnson.

■ The five-year time to serve ordered by the trial judge here is within guidelines suggested by the American Bar Association.[6] We cannot say that under these circumstances the trial judge was clearly mistaken.

## III. RACIAL BIAS

In his brief, Johnson, a black, alleges that he received an excessively severe sentence as a result of racial bias. Besides reciting the statistical findings of the Alaska Judicial Council,[7] he contends that he can demonstrate that his sentence was higher than it would have been if he were not black. He points out, among other things, that this was his first offense, he was employed, he had received an honorable discharge from the Marines, and he supported his children by a former marriage. He further contends that the reasons given by the judge for such a long sentence are not supportable, implying that these reasons were a pretext to hide racial bias.

Johnson urges this court to adopt the type of analysis used in *Brown v. Wood*, 575 P.2d 760, 768 (Alaska 1978), *modified*, 592 P.2d 1250 (Alaska 1979), for civil sex discrimination cases. In *Brown*, we held that once the plaintiff showed she was paid less than her male colleagues for comparable work at the University of Alaska, she had established a prima facie case of discrimination. The burden of proof then shifted to the university to show that the difference in pay was based on other considerations besides sex. The plaintiff would then be able to show that the rebuttal evidence submitted by the University was in fact a pretext.

■ We agree that the approach used in *Brown* is appropriate in examining racial discrimination in sentencing. A person attacking his sentence on the ground of racial bias, however, must carry the initial burden which was described in *Campbell v. State*, 594 P.2d 65, 69 (Alaska 1979), and *Bell v. State*, 598 P.2d 908, 916 (Alaska 1979), as showing that the

> sentence was probably higher than that which would have been imposed upon a defendant of a different race with a like criminal history who committed a similar offense.[8]

594 P.2d at 69.

We are mindful that the burden of proof cannot be made so stringent that a person attacking a sentence as discriminatory is necessarily doomed to failure. Furthermore, the evidence available to show dis-

---

5. Keller was sentenced to five years' imprisonment for possession with intent to sell amphetamine tablets and possession of heroin.

6. American Bar Association Standards Relating to Sentencing Alternatives and Procedures, § 2.1(d) (approved draft 1971).

7. Alaska Judicial Council, Alaska Felony Sentencing Patterns: A Multivariate Statistical Analysis (1974–1976) (April 1977), preliminary report; Judicial Council Findings Regarding Possible Racial Impact in Sentencing (September 6, 1978).

8. Johnson correctly notes that any disparity in sentence length, no matter now small, that re-

crimination will usually be circumstantial. As noted by one court in a sex discrimination case:

> [W]e very seldom find a resolution of a board of directors or a faculty committee agreeing to engage in sex discrimination any more than we would expect to find the same in a conspiracy to violate the antitrust laws.

*Johnson v. University of Pittsburgh,* 359 F.Supp. 1002, 1007 (W.D.Pa.1973). Nevertheless, on the facts of this case we are not persuaded that Johnson's sentence was the result of racial discrimination. The results of the Judicial Council study showing the possibility of racial bias in sentencing in the past have not been subjected to cross-examination and scrutiny in court. There may be doubt whether such generalized statistics can ever be used to detect bias in an individual proceeding in any event.[9] There apparently are no statistics available on past sentences imposed by the judge in this case.

■ As discussed in the previous section, we cannot say that the sentence was clearly mistaken. Johnson has failed to make a prima facie case that his sentence was more severe than that which would have been given a defendant of a different race involved in a trafficking in heroin to the same extent.

Both Johnson and the Alaska State Human Rights Commission, as amicus curiae, urge the involvement of the Human Rights Commission in this case[10] or other cases where allegations of racial bias in sentencing are made. The Commission apparently concedes that it is without authority to be granted the status of an intervenor under AS 18.80.145, or to issue any binding order under AS 18.80.135(b) related to sentencing.[11] The Commission's power to act outside of the areas enumerated in AS 18.80.-200(a) is quite limited. AS 18.80.060(a)(5) provides that the Commission may

sults from racial bias is impermissible. Taken in context, our remarks in *Campbell* indicating one would need to show a sentence to be "inordinately higher" as a result of racial bias referred to the fact that ordinarily it would be difficult to detect racial bias unless the sentence was substantially higher than the norm. To the extent that any racial bias in sentencing can be shown, however, a person establishes a prima facie case of discrimination. In *Burleson v. State*, 543 P.2d 1195, 1202 (Alaska 1975), we noted that "theoretically if two persons of identical background commit the same offense, they should receive like punishment." But we also noted that sentencing is not an "exact science" and that disparities could occur. Certainly not every disparity in sentence length can be attributed to racial bias.

**9.** *See Maxwell v. Bishop*, 398 F.2d 138, 147–48 (8th Cir. 1968), *rev'd on other grounds*, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970).

**10.** Johnson may wish to develop a more complete factual record of discrimination through post-conviction relief proceedings under Criminal Rule 35.

**11.** AS 18.80.200(b) confines the activities of the Human Rights Commission to discrimination "in employment, in credit and financing practices, in places of public accommodation, [or] in the sale, lease, or rental of real property . . . ." The failure of the legislature to include a provision enabling the Commission to initiate an action to enforce an order regarding sentences indicates that the legislature did not

intend for the Commission to participate directly in the sentencing process. Moreover, the legislature's specific grant of authority to this court to review sentences under AS 12.55.120 suggests that the legislature intended this court to have the sole authority to review sentences. Numerous decisions from other states have interpreted the grant of jurisdiction given to a human rights agency under statutes similar to Alaska's and have limited jurisdiction to areas specifically enumerated in their statutes. *See City of Chicago v. Fair Employment Practice Comm'n*, 357 N.E.2d 1154, 1155 (Ill.1976) ("Since the Commission is a statutory creature, its powers are dependent thereon, and it must find within the statute the authority which it claims"); *Kansas Comm'n on Civil Rights v. Howard*, 218 Kan. 248, 544 P.2d 791 (1975) (no authority to investigate officer's decision to arrest the complainant); *City of Independence v. Kansas Comm'n on Civil Rights*, 218 Kan. 243, 544 P.2d 799, 801 (1975) (commission has no authority to investigate government activity not involving employment relations, public accommodation or housing); *Internat'l U.A., A. & I.W.A. v. Township of MahWah*, 119 N.J.Super. 389, 291 A.2d 847, 848 (1972) (civil rights agency lacked jurisdiction to adjudicate that a municipal zoning ordinance is discriminatory because jurisdiction is over particular acts of discrimination); *Schuchter v. Div. on Civil Rights*, 117 N.J.Super. 405, 285 A.2d 42, 43 (N.J.Super. 1971) (Division on Civil Rights was without jurisdiction over action involving discrimination of political belief because court would not

study the problems of discrimination in all or specific fields of human relationships, and foster through community effort or goodwill, cooperation and conciliation among the groups and elements of the population of the state, and publish results of investigations and research as in its judgment will tend to eliminate discrimination because of race, religion, color, national ancestry, physical handicap, age, sex, marital status, changes in marital status, pregnancy or parenthood.

The Commission does represent a valuable resource in evaluating evidence of discrimination, and its participation either as amicus curiae or through expert testimony in proceedings involving allegations of racial bias in sentencing would no doubt be of assistance to the court and the parties involved.

The judgment of the superior court is AFFIRMED.

BURKE, J., not participating.

expand legislative enactment); *State Div. of Human Rights v. County of Monroe*, 65 A.D.2d 947, 410 N.Y.S.2d 734 (N.Y.App.Div.1978) (division had no jurisdiction to entertain prisoner's complaint that he had been denied work in work release program because committed to another agency); *New York Times Co. v. City of New York Comm'n on Human Rights*, 41 N.Y.2d 345, 393 N.Y.S.2d 312, 318, 361 N.E.2d 963, 969 (N.Y.1977) ("It was beyond the ken of the . . . Commission . . . to enforce . . . an economic boycott of . . . South Africa"); *Pennsylvania Human Relations Comm'n v. St. Joe Minerals, Etc.*, 476 Pa. 302, 382 A.2d 731, 736 (Pa.1978) (because the statute does not so provide, the Commission's power to investigate does not imply the power to compel an employer to answer written interrogatories bearing upon employer's alleged discriminatory practices).