Sonja ALVAREZ, Appellant,

v.

KETCHIKAN GATEWAY BOROUGH, Appellee.

No. A–8603.

Court of Appeals of Alaska.

April 30, 2004.

Rehearing Denied June 18, 2004.

Sonja Alvarez, pro se, for Appellant.

Scott A. Brandt–Erichsen, Borough Attorney, Ketchikan Gateway Borough, Ketchikan, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Sonja Alvarez was convicted of violating two Ketchikan Gateway Borough ordinances for permitting her dog to run loose and bite a pedestrian, Larry Johnson. She was also convicted of failing to report this dog bite to the Borough Animal Protection Department.

After a bench trial, Superior Court Judge Michael A. Thompson, sitting in the district court, found that Alvarez had not been negligent in connection with her dog running loose and biting Johnson. Nevertheless, Judge Thompson convicted Alvarez of violating the two Borough ordinances, ruling that they were strict liability offenses and that no proof of negligence was required.

Alvarez argues that the court erred in ruling that these violations were strict liability offenses. We agree, and therefore reverse these two convictions based on Judge Thompson's finding that Alvarez was not negligent.

Alvarez also argues that her rights to a speedy trial and equal protection of the laws were violated. We find no merit to these

claims. We therefore affirm Alvarez's conviction for failing to report the dog bite promptly to the Animal Protection Department.

### Facts and proceedings

On August 29, 2001, at about 8 p.m., Johnson was walking home along Nadeau Street in Ketchikan when Alvarez's German Shepherd, Carmen, growled at Johnson as he passed by Alvarez's house. Carmen lunged at Johnson, causing Johnson to jump from the sidewalk to the street, where Carmen bit him on the leg, tearing his pants.

A neighbor, Leonard Ward, yelled at Carmen, hit the dog with his baseball cap, and chased it off. Alvarez subsequently came out of her house, called the dog, and put it in the house.

Alvarez apologized to Johnson and offered to pay for his medical bills and replace his torn sweat pants. Johnson went to the hospital emergency room for treatment. The staff at the hospital cleaned and dressed the wound and gave Johnson a shot. The wound did not require stitches.

Alvarez was unaware at the time of this incident that her dog was loose in the yard. However, she knew she was required to contact the Animal Protection Department to report the dog bite, but did not do so. She apparently assumed, correctly, that the hospital would notify Animal Protection.

At the hospital, an Animal Protection officer examined and photographed Johnson's wound and took his statement. The officer then tried unsuccessfully for two days to contact Alvarez to ensure that her dog was quarantined. Once the officer reached Alvarez, she cooperated with the quarantine.

The Borough ultimately charged Alvarez with three minor offenses:[1] failure to report a dog bite,[2] failure to properly restrain an animal,[3] and allowing an animal to molest (in this case, bite) a person.[4] Alvarez was convicted of these offenses at a bench trial before Judge Thompson and fined $250, with $150 suspended, for a total fine of $100. She was also ordered to pay $88.21 in restitution to Johnson for his medical expenses.

Alvarez appeals her convictions.

### Did the district court err by convicting Alvarez even though the court found that she was not negligent?

■ Alvarez argues that Judge Thompson erred in concluding that count II (the leash law violation) and count III (the dog bite violation) were strict liability offenses. She argues that Judge Thompson should have acquitted her of these offenses after he found that the violations were not due to her negligence.

Judge Thompson found that Alvarez had not negligently allowed her dog to escape the house and bite Johnson. That is, he found that Carmen was, as far as Alvarez knew, properly restrained and unable to escape from the curtilage of Alvarez's home. Nevertheless, the court convicted Alvarez of these violations after ruling that they were strict liability offenses.

The Ketchikan Gateway Borough leash law, KGB § 20.70.005, provides that a person who owns or is responsible for a dog "shall not permit [the] dog to be at large" in certain specified areas.[5] The anti-molestation ordinance, KGB § 20.80.010, provides that a person who owns or is responsible for an animal "shall [not] permit or allow such animal … [t]o molest a person." The Borough argues that these are strict liability offenses because they do not specify a culpable mental state.[6]

1. The municipal ordinances Alvarez was convicted of violating are "minor offenses" under District Court Criminal Rule 8(b) because they are classified as violations and cannot result in incarceration, loss of a valuable license, or a fine of greater than $500.

2. Ketchikan Gateway Borough Code (KGB) § 20.50.020.

3. KGB § 20.70.005.

4. KGB § 20.80.010(a).

5. KGB § 20.70.005(a).

6. The Borough relies by analogy on AS 11.81.600(b), which provides that violations that specify no culpable mental state or otherwise demonstrate a legislative intent to dispense with the requirement of a culpable mental state, are strict liability offenses. Alaska Statute 11.81.600 only applies to Title 11 offenses. *See* AS 11.81.640.

Alvarez argues that the verbs "permit" and "allow" imply a culpable mental state of at least negligence.

We agree with Alvarez. The verbs "permit" and "allow" are commonly understood to imply some volition on the part of the actor. And other jurisdictions having similar laws—laws providing that the owner of an animal shall not "permit," "allow" or "suffer" the animal to run at large—require proof of at least negligence.[7]

The Borough has offered no persuasive legal authority or legislative history that convinces us that the drafters of the Ketchikan ordinances intended to depart from this well-settled rule. We therefore reverse Alvarez's convictions on count II and count III based on Judge Thompson's finding that the violations were not caused by Alvarez's negligence.

### Was Alvarez's right to a speedy trial violated?

Alvarez next argues that her statutory and constitutional rights to a speedy trial were violated. We first address Alvarez's statutory speedy trial claim.

Alaska Criminal Rule 45(b) requires a defendant to be brought to trial within 120 days. The critical dispute in Alvarez's case is when that 120–day period commenced. Alvarez argues, relying on Alaska Criminal Rule 45(c)(6), that the period began to run on October 3, 2001, when she demanded a jury trial. The Ketchikan Gateway Borough argues, relying on Criminal Rule 45(c)(2), that the clock started to run on February 25, 2002, when the Borough's second complaint was served on Alvarez (as explained below, the Borough's first complaint was dismissed on Alvarez's motion).

### The relevant procedural history

On September 5, 2001, the Borough filed a civil complaint against Alvarez, seeking civil penalties for her violations of the three Borough ordinances. Alvarez moved to dismiss the case, arguing that these violations were

criminal and should be charged as "minor offenses." The Borough did not object to reclassifying the case as criminal. On October 17, 2001, District Court Judge Kevin G. Miller dismissed the civil case and ordered that the case be reopened as charging the violation of minor offenses.

Between October 24, 2001, and December 14, 2001, Alvarez filed three motions to dismiss, alleging: (1) that the Ketchikan Borough had no power to enact the animal control ordinances she was charged with violating; (2) that the Borough's complaint violated Alaska Criminal Rule 3(a) because it was not signed by a judge or magistrate; and (3) that she had been denied her right to equal protection of the laws because her prosecution was racially motivated. On January 4, 2002, Superior Court Judge Trevor N. Stephens, sitting in the district court, denied Alvarez's motion alleging that the Borough had no power to enact the animal control ordinances at issue. However, several days later, on January 10, 2002, he granted Alvarez's motion alleging that the complaint did not comply with Criminal Rule 3(a) and dismissed the case without prejudice. Judge Stephens invited Alvarez to resurrect her motions to dismiss if the Borough re-filed its complaint. Twenty days later, on January 30, 2002, the Borough did re-file its complaint, but Alvarez was not served with a summons on that complaint until February 25, 2002.

On March 12, 2002, Alvarez filed three motions renewing her claims that the Borough had acted outside its authority in enacting the ordinances she was charged with violating. She also re-filed her still undecided motion to dismiss based on a violation of her right to equal protection. On that date, Alvarez also moved for a protective order to bar the Borough from admitting evidence of other reports in her Animal Protection Department file, demanded a jury trial, and requested a change of judge. The case was eventually assigned to Judge Thompson, who denied all Alvarez's pending motions on June 7, 2002.

---

**7.** See Annotation, *Owner's liability under legislation forbidding domestic animals to run at large on highways, as dependent on negligence,* 34

A.L.R.2d 1285 § 4, at 1289–91 (1954) and Later Case Service § 4, at 669–73 (2001).

On July 26, 2002, Alvarez filed a motion to dismiss for violation of Rule 45. She argued that the Rule 45 clock had started on October 3, 2001, when she pleaded not guilty to the initial civil complaint and demanded a jury trial. Alternatively, she argued that the 120–day period began to run on November 13, 2001, when she entered her not guilty plea at arraignment. Alvarez argued that in either case, after subtracting the various periods excluded under Rule 45(d), the Borough had failed to bring her to trial within the required 120 days.

Judge Thompson agreed and dismissed Alvarez's case. Because it was unclear when Alvarez was initially cited, Judge Thompson ruled that the 120–day period had started to run on October 3, 2001, when Alvarez demanded trial.

The Borough moved for reconsideration of Judge Thompson's order, but Judge Thompson reaffirmed his dismissal. He reasoned that even if the speedy trial clock re-started when Judge Stephens dismissed the case on January 10, 2002, and even allowing the Borough a reasonable period to re-institute its case, Alvarez had not been brought to trial within the required 120–day period.

The Borough appealed this decision to the superior court. Superior Court Judge Larry R. Weeks reversed the district court's decision and remanded the case. Judge Weeks ruled that under Rule 45(c) the speedy trial clock started on February 25, 2002, the day Alvarez was served with the Borough's second complaint, which followed Judge Stephens's dismissal of the case on Alvarez's motion.

*Why we agree with Judge Weeks's decision*

Rule 45(b) requires a defendant charged with a felony, misdemeanor, or violation to be tried "within 120 days from the time set forth in paragraph (c) of this rule." Subsection (c) provides in relevant part:

(1) *Generally.* Except as provided in subparagraphs (2) through (5), the time for trial shall begin running, without demand by the defendant, from the date the charging document is served upon the defendant.

(2) *Refiling of Original Charge.* If a charge is dismissed by the prosecution, the refiling of the charge shall not extend the time. *If the charge is dismissed upon motion of the defendant, the time for trial shall begin running from the date of service of the second charge.*[8]

. . . .

(6) *Minor Offenses.* In cases involving minor offenses under District Court Criminal Rule 8, the defendant must be tried within 120 days from the date the defendant's request for trial is received by the court or the municipality, whichever occurs first.

■ Alvarez argues that her case is governed by Rule 45(c)(6), and that none of the other subsections of Rule 45(c) applies to minor offenses. Therefore, she argues, the speedy trial clock started on October 3, 2001, the date she demanded trial, and did not restart after the case was dismissed on her motion, re-filed, and re-served, as would be the case with all non-minor misdemeanor and felony offenses under Rule 45(c)(2). She contends that this special treatment for violations makes sense because it prevents minor offenses from "linger[ing] in the court system."

While this may be a reasonable construction of Criminal Rule 45(c)(6), it was not the supreme court's intent in enacting that provision. Before 2001, when the supreme court adopted subsection (c)(6) and its parallel provision, District Court Criminal Rule 8(p), minor offenses were treated the same as all other offenses for speedy trial purposes— that is, the time for trial began to run from the date the charging document was served on the defendant.[9] However, in cases involving minor offenses, the government had difficulty meeting this deadline because defendants often did not request a trial until well into the 120–day period.[10] To address this problem, the supreme court amended the rule to establish a later start date for the

---

8. Emphasis added.

9. *See* former Alaska R.Crim. P. 45(c)(1) (2000); Supreme Court Order No. 1422 (effective April 15, 2001).

10. *See* October 22, 1999, memorandum proposing a revision of the 120–day rule for minor offenses, submitted to Court Rules Attorney Christine Johnson by Clerk of Court Charlene

speedy trial period in cases involving minor offenses—the date the defendant demanded trial.

There is nothing in the rule language or history to suggest that the supreme court, in remedying this specific problem, also intended to broadly exempt minor offenses from the provisions of Rule 45(c)(2)-(5). Indeed, the unqualified language in District Court Criminal Rule 8(p)—"The right to speedy trial on minor offenses is governed by Criminal Rule 45"—suggests that the court did not intend such a sea change.[11] We therefore reject Alvarez's claim that minor offenses are exempt from Rule 45(c)(2).

Rule 45(c)(2) unambiguously provides that if a charge is dismissed on the defendant's motion, "the time for trial shall begin running from the *date of service* of the second charge."[12] Applying this rule in Alvarez's case, the speedy trial period began on February 25, 2002, the date she was served with the Borough's second complaint, which followed the dismissal of the first complaint on Alvarez's motion. Therefore, even assuming Alvarez's other challenge to Judge Weeks's speedy trial calculation has merit,[13] only 101 days had elapsed at the time Judge Weeks reinstated Alvarez's case. We therefore agree with Judge Weeks's decision to reverse the ruling of the district court.

*Why we agree with Judge Thompson's decision on remand*

Judge Weeks remanded Alvarez's case to the district court on December 20, 2002, and

Alvarez went to trial on March 17, 2003. At trial, Alvarez again moved to dismiss her case on Rule 45 grounds because of the additional time, disregarding exclusions, that had elapsed between Judge Weeks's remand and her trial date—by her calculations, an additional 51 days. Judge Thompson ruled that Rule 45 had not been violated.

Under Criminal Rule 45(c)(4), the speedy trial clock restarts when a case is remanded for trial following an appeal. Alvarez's case was remanded to the district court on December 20, 2002, and went to trial three months later, on March 17, 2003. Alvarez was therefore brought to trial well within the 120–day speedy trial period.

*Why we also reject Alvarez's constitutional speedy trial claim*

■ Alvarez also argues that her state constitutional right to a speedy trial was violated because her trial did not take place until eighteen months after the Borough filed its original civil complaint.[14] Judge Thompson also rejected this claim.

■ Even if a defendant is brought to trial within the limits established by Rule 45, in rare cases the delay in trial might still have prejudiced the defendant to such an extent that the defendant's constitutional speedy trial right was violated.[15] The supreme court has ruled that an unexplained

---

Dolphin; *see also* February 2, 2001, proposal to amend District Court Criminal Rule 8(p), submitted to the Supreme Court by Rules Attorney Barbara Hood.

11. District Court Criminal Rule 8(p) provides:

> Speedy Trial—When Time Commences to Run. The right to speedy trial on minor offenses is governed by Criminal Rule 45. A defendant charged with a minor offense must be tried within 120 days from the date the defendant's request for trial is received by the court or the municipality, whichever occurs first.

12. Emphasis added.

13. Alvarez argues that Judge Weeks erred in excluding the 14 days from May 10, 2002, to May 23, 2002, because she had requested a post-

ponement of the May 10 pre-trial conference. Alvarez claims that she was unaware that her postponement request would constitute a continuance, and that Judge Weeks should not have excluded this period because of Criminal Rule 45(d)(2). Criminal Rule 45(d)(2) provides that "[a] defendant without counsel shall not be deemed to have consented to a continuance unless the defendant has been advised by the court of the right to a speedy trial under this rule and of the effect of consent." We find it unnecessary to address this claim; even if Judge Weeks had erred in excluding these 14 days, only 101 days out of the 120–day Rule 45 period would have elapsed on the date of his decision.

14. Alaska Const. art. I, § 11.

15. *Deacon v. State*, 575 P.2d 1225, 1229 (Alaska 1978).

delay of fourteen months or more is presumptively prejudicial,[16] and that, without an affirmative showing of prejudice, a delay of eight months or less is presumptively non-prejudicial.[17] Any periods of delay caused by the defendant are excluded from this calculation.[18] Only after a defendant has established either actual prejudice or a presumption of prejudice do Alaska courts consider if the delay amounted to a constitutional violation.[19] This is done by balancing the four factors enunciated in *Barker v. Wingo*:[20] (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his or her right, and (4) the prejudice to the defendant.[21]

Alvarez's constitutional right to a speedy trial attached at the earliest on September 5, 2001, when the Borough filed its first complaint.[22] That was more than eighteen months before Alvarez's trial date. However, close to five months of the delay between October 3, 2001, and July 26, 2002, when Alvarez filed her speedy trial motion, were attributable to Alvarez's numerous motions to dismiss. Nearly five more months passed between Judge Thompson's dismissal—which resulted from Alvarez's motion—and Judge Weeks's reversal of that dismissal. Then, after the case was remanded, there was a delay of more than two months while Alvarez's fifth motion to dismiss was pending. All told, Alvarez caused more than twelve of the eighteen months of delay. When these delays are subtracted from the total, only about six months of delay can be attributed to the government. As we noted earlier, a delay of eight months or less is presumptively non-prejudicial, absent actual prejudice.

Alvarez argues that she was prejudiced because she could not locate a neutral witness, Leonard Ward, who she claimed lived across the street from her for many months after the dog bite incident but then moved to an unknown address. Alvarez made no offer of proof in district court about how Ward's testimony would have benefited her defense; nor did she specify what efforts, if any, she made to locate Ward or preserve his testimony. Moreover, from our review of the record, it appears that Ward's testimony would have related only to the dog bite, not to Alvarez's failure to report that bite. If this is the case, then Alvarez's claim of prejudice is moot, because we have reversed her convictions for violating the leash and dog bite ordinances.

Alvarez additionally claims that she was prejudiced because the delay in trial caused her stress and disrupted her life. Again, even assuming this is true, Alvarez has not shown how this disruption in her life prejudiced her defense. And, as Alvarez concedes, she never asked the court to set an earlier trial date. Given these circumstances, we find no merit to Alvarez's constitutional speedy trial claim.

*Was Alvarez's right to equal protection violated?*

█ Alvarez also argues that her constitutional right to equal protection of the laws was violated. Before trial, she filed a motion to dismiss on this ground, arguing that Eugene Martin, the director of the Animal Protection Department in Ketchikan, had singled her out for prosecution based on her Mexican–American ancestry. To support this claim, she asserted that her dog had, on two occasions, been denied space at the Borough kennel. She also asserted that there had been some fifty dog bites per year in Ketchikan in 1999, 2000, and 2001, and that she was the only person who had ever been prosecuted. She additionally asserted that she had been discriminated against because an ordi-

---

**16.** *Rutherford v. State*, 486 P.2d 946, 951–52 (Alaska 1971); *Glasgow v. State*, 469 P.2d 682, 688–89 (Alaska 1970).

**17.** *Nickerson v. State*, 492 P.2d 118, 120 (Alaska 1971); *Tarnef v. State*, 492 P.2d 109, 112–13 (Alaska 1971).

**18.** *Rutherford*, 486 P.2d at 952 n. 15; *Springer v. State*, 666 P.2d 431, 435 (Alaska App.1983).

**19.** *State v. Mouser*, 806 P.2d 330, 340 (Alaska App.1991).

**20.** 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

**21.** *Mouser*, 806 P.2d at 340.

**22.** *See id.* at 339.

nance enacted after the dog bite incident was not applied in her case.

■ Judge Thompson denied Alvarez's motion, ruling that her assertions were unsupported, and that even if they were supported, they would fail to establish a prima facie case of discrimination. We agree with this ruling. A person cannot establish a prima facie case of racial discrimination without showing some nexus between the discriminatory treatment and race.[23] In this case, Alvarez asserted in her pleadings that she had been treated differently than other owners of biting dogs, but she offered no evidence to support an inference that this treatment was motivated by her racial heritage.

■ In any event, even if Judge Thompson had erred in ruling that Alvarez had failed to establish a prima facie case of racial discrimination, that error would be harmless because Alvarez was allowed to fully litigate her claim. After hearing Alvarez's evidence on this issue, and the Borough's response—which included evidence that it had issued numerous other dog bite citations—Judge Thompson concluded that Alvarez had not been discriminated against. Alvarez has not challenged that ruling on appeal.

*Conclusion*

We REVERSE Alvarez's convictions on count II and count III. In all other respects, we AFFIRM the decisions of the district court.

**23.** *See Johnson v. State*, 607 P.2d 944, 947 (Alaska 1980); *cf. Rollins v. Alcoholic Beverage Control Board*, 991 P.2d 202, 210 (Alaska 1999); *Gates v. City of Tenakee Springs*, 822 P.2d 455, 461 (Alaska 1991); *Barber v. Anchorage*, 776 P.2d 1035, 1040 (Alaska 1989); *State v. Reefer King Co., Inc.*, 559 P.2d 56, 65 (Alaska 1976); *Belgarde v. State*, 543 P.2d 206, 208 (Alaska 1975); *Nelson v. State*, 387 P.2d 933, 935 (Alaska 1964).